UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| CHRISTINA NOEL HIZER, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 4:16-CV-00092 |
| | ) |
| NANCY A. BERRYHILL, acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff, Christina Noel Hizer, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for Disability Insurance Benefits. The Plaintiff's application was denied initially and upon reconsideration. An administrative law judge (ALJ) held a hearing on the Plaintiff's application, and on June 15, 2015, the ALJ issued a Decision holding that the Plaintiff was not entitled to benefits because she was not disabled under the relevant provisions of the Social Security Act. On September 11, 2016, the Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. The Plaintiff subsequently filed suit pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3).

**BACKGROUND**

The Plaintiff was born on January 19, 1970. (R. at 92, ECF No. 4.) The Plaintiff previously worked as a quality assurance monitor and a server, and worked at a school and daycare. (R. at 86, 24.) In this case, Plaintiff originally claimed to have become disabled on May 22, 2010, but she amended her onset date at the administrative hearing to June 13, 2012. (R. at

48.) She claims to be disabled due to right knee degenerative joint disease, obesity, depression, anxiety, post-traumatic stress disorder, and obsessive-compulsive disorder.[1] (R. at 25.)

## THE ALJ'S HOLDING

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. § 404.1520. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ determined that the Plaintiff had not engaged in SGA since the amended alleged onset date of disability, and thus, the Plaintiff satisfied the step one inquiry. (R. at 24–25.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting the ability to do basic work activities pursuant to § 404.1520(c). Here, the ALJ determined that the Plaintiff's impairments of right knee degenerative joint disease, obesity, depression, and anxiety (including post-traumatic stress disorder and obsessive-compulsive disorder) were severe

---

[1] Plaintiff concedes that she does not dispute any of the ALJ's findings regarding her physical conditions. (Pl.'s Br. at 2 n.3, ECF No. 13.) Therefore, this Opinion and Order focuses on Plaintiff's mental impairments.

impairments because they significantly limited her ability to perform basic work activities. (R. at 25–30.)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of [the] listings in appendix 1 . . . ." § 404.1520(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rises to this level, she earns a presumption of disability "without considering [her] age, education, and work experience." § 404.1520(d). But, if the impairment(s), either singly or in combination, falls short, an ALJ must move to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do physically, despite her limitations—to determine whether she can perform this "past relevant work," § 404.1520(a)(4)(iv), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." § 404.1520(a)(4)(v).

In the case at hand, the ALJ determined that the Plaintiff's impairments, either singly or in combination, do not meet or equal any of the listings in Appendix 1 and that the Plaintiff has the RFC to perform unskilled, sedentary work as defined by § 404.1567(a), with the following exceptions:

> occasionally climb ladders, ropes, or scaffolding, kneel, crouch, or crawl; frequently climb ramps and stairs, balance, and stoop; no more than occasional contact with the general public, supervisors, and coworkers; no more than occasional changes in the work environment. She must be allowed the use of a cane to ambulate.

(R. at 31.)

In arriving at the RFC, the ALJ determined that the Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, "however, her

3

statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." (R. at 32.)

Once the RFC is established, the ALJ uses it to determine whether the claimant can perform her past work and, if necessary, whether the claimant could perform other work in the economy. 20 C.F.R. § 416.920. At this initial step of the evaluation, the ALJ determined that the Plaintiff could not perform her past work, but in light of her age, education, work experience, and RFC, that she could perform other jobs that existed in significant numbers in the national economy. (R. 36.) Specifically, the Vocational Expert (VE) testified at the hearing that she could work as a document specialist, ticket checker, and addresser. (R. 37.)

## STANDARD OF REVIEW

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and resolve the case accordingly. *Id.* at 399–400. In a substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th

Cir. 2003). In other words, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Id.*

When an ALJ recommends that the Agency deny benefits, the ALJ must "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008). Conclusions of law are not entitled to such deference, however, so where the ALJ commits an error of law, the Court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

On appeal to this Court, the Plaintiff claims the ALJ committed three main errors: (1) the ALJ failed to properly weigh the medical opinion evidence; (2) the ALJ failed to properly evaluate the Plaintiff's credibility; and (3) the ALJ relied upon flawed vocational expert testimony. Each will be addressed in turn.

**A.      Weight Given to the Opinions of Plaintiff's Treating Psychiatrists**

The Plaintiff argues that the ALJ improperly gave little weight to the opinions of her two treating psychiatrists, Dr. Sitha Gita ("S.G.") Kalapatapu and Dr. Umamaheswara R. ("U.R.") Kalapatapu. The Plaintiff also contends that the ALJ did not properly go through the "checklist of factors" concerning the length of the treating relationship, frequency of examination, supportability, consistency, nature of the treatment relationship, and the extent of the treatment relationship. *See* 20 C.F.R. § 404.1527. Additionally, the Plaintiff claims that the ALJ improperly credited the opinions from non-examining state agency psychologists who rendered opinions more than two years before the ALJ's decision and even before the opinions from the Plaintiff's treating psychiatrists were entered into the record. In its response, the Government insists that the opinions of the treating psychiatrists deserve less weight under section 404.1527(c), and this Court should affirm the ALJ's decision.

An opinion by a treating physician about the nature and severity of a claimant's impairments is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). An ALJ may discount even a treating physician's opinion if it is inconsistent with the medical record. *See* 20 C.F.R. § 404.1527(c)(2), (4) (medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence). The Seventh Circuit has reiterated the importance of opinions from treating sources. *See Scrogham v. Colvin*, 765 F.3d 685, 696 (7th Cir. 2014) (holding under 20 C.F.R. § 404.1527(c)(1), an ALJ should "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]."). The rationale for according controlling weight in these circumstances is that a treating source may

6

provide a longitudinal and detailed picture of a claimant's impairments and may bring a unique perspective to the medical evidence that may not be shown by objective medical findings alone or reports from individual examinations. 20 C.F.R. § 404.1527(c)(2).

In this case, the ALJ was up front in his decision that he gave "little weight to the form opinions from Dr. Kalapatapu, described in detail above (Exhibits 8F, 9F)." (R. at 35.) The ALJ stated that the standard form medical questionnaire assessing residual functional capacity "is entitled to little weight where the opinion is without explanation in the form of a narrative." (*Id.*) The ALJ acknowledged that the written explanations did emphasize anxiety while traveling and receiving criticism, and the more recent form found the claimant "unable to function with increased anxiety," but he believed the doctors' treatment notes did not suggest that level of dysfunction. (*Id.*) Rather, the ALJ noted, "they show improvement with treatment, particularly when compliant with her medication regimen." (*Id.*)

This Court finds that the ALJ did not provide a logical bridge between the facts in the record and his ultimate conclusion that the treating psychiatrists' opinions were not entitled to controlling weight. First, this Court disagrees with the ALJ's criticism of the treating doctors' opinions because they were offered on questionnaire forms. As the Court in *Samaha v. Colvin*, No. 14 CV 7405, 2016 WL 6476542, at *3 (N.D. Ill. Nov. 2, 2016), recognized, this is simply "incorrect." "Treating physicians quite often complete check-the-box or fill-in-the-blank questionnaires to express their opinions about their patients' specific abilities and limitations." *Id.*; s*ee also Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (characterizing as "highly relevant" a doctor's assessment of his patient's symptoms and RFC as provided in a questionnaire.). Like other treating physician opinions, those given in response to a form

7

questionnaire still merit controlling weight when they are well-supported and not contradicted by other evidence in the record. *See, e.g., Stage v. Colvin*, 812 F.3d 1121, 1123-26 (7th Cir. 2016) (criticizing an ALJ's rejection of an RFC questionnaire).

Moreover, the questionnaire forms in this case did contain more than just checks, they also contained handwritten notes by the physicians. The first form was completed by Dr. S.G. Kalapatapu on August 19, 2013. (R. at 460–67.) The questionnaire included checked boxes for the diagnoses of mood disturbance, recurrent panic attacks, feelings of guilt/worthlessness, difficulty thinking or concentrating, suicidal ideation or attempts, decreased energy, generalized persistent anxiety, and hostility and irritability; and checked boxes for her opinion that the Plaintiff was "markedly limited" in her ability to accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting and travel to unfamiliar places or use public transportation; and "moderately limited" in her ability to understand, remember, and carry out detailed instructions, and be aware of normal hazards and take appropriate precautions. (R. at 461–65.) Dr. S.G. Kalapatapu also wrote that the Plaintiff had symptoms of: sadness, anger, increased anxiety, depression, sleeplessness, nervousness, moodiness, low appetite, low libido, and fear of being alone, that the Plaintiff's most severe symptoms were increased anxiety and increased sadness, that the Plaintiff's symptoms and limitations had been present for three years, and that she would be absent from work more than three times a month due to her impairments or treatment. (R. at 462, 467.)

The second form was completed by Dr. U.R. Kalapatapu on January 14, 2015.[2] (R. at 468–72.) The form does contain checked boxes for Plaintiff's "marked" limitations in her ability to perform at a consistent pace without rest periods of unreasonable length or frequency and travel to unfamiliar places or use public transportation; and "moderate-to-marked" limitations in her ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule and consistently be punctual, sustain ordinary routine without supervision, work in coordination with or near others without being distracted by them, complete a workday without interruptions from psychological symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them, maintain socially appropriate behavior, adhere to basic standards of neatness, and respond appropriately to workplace changes. (R. at 471.) Dr. U.R. Kalapatapu also hand wrote that Plaintiff's anxiety was rated 10 on a scale of 10, and depression was rated 8 on a scale of 10, and "patient unable to function with increased anxiety." (R. at 470.)

Although the ALJ was critical of the opinions from the treating doctors because they were offered in questionnaire forms, "the form takes on greater significance when it is supported by medical records." *Larson v. Astrue*, 615 F.3d 744, 750–51 (7th Cir. 2010). In this case, mental status examinations in the treatment records confirm the clinical abnormalities identified by the treating psychiatrists in the questionnaire forms, including findings of a sad and anxious mood

---

[2] The ALJ stated that Dr. S.G. Kalapatapu completed both of the impairment questionnaires (R. at 28), and the record index does list both questionnaires coming from Dr. S.G. Kalapatapu. The first form dated August 19, 2013, was completed by Dr. S.G. Kalapatapu. (R. at 467.) However, the second form, completed on January 14, 2015, was signed and completed by Dr. U.R. Kalapatapu. (R. at 472.)

and affect (R. at 292), tearfulness, anxiety, a depressed and dysphoric mood, a labile affect, distracted thought process, evidence of guilt in thought content, mildly impaired attention and concentration, and fair insight and judgment (R. at 307), reports that her depression had worsened and her anxiety had increased (R. at 494), reports of memory loss and lack of concentration, anxiety, insomnia, lack of appetite and stress (R. at 506), a blunt affect congruent with mood, low and monotonous speech, and slight paranoia about her mother and sister being against her in some way (R. at 519), experiencing anxiety and depression (R. at 531), and a constricted and tearful affect congruent with mood (R. at 536). The ALJ also believed that the GAF scores assessed by Drs. S.G. Kalapatapu and U.R. Kalapatapu (between 55 and 60) were inconsistent with the severity of the functional limitations the doctors assessed. (R. at 35.) However, it is well-settled in the Seventh Circuit that GAF scores have limited value in determining whether a patient can engage in substantial gainful activity. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Second, the ALJ also erred by relying heavily on the statement that the treating psychiatrists' treatment notes show that the Plaintiff improved with treatment, particularly when she was compliant with her medication regimen. (R. at 35.) "There can be a great distance between a patient who responds to treatment and one who is able to enter the workforce . . . ." *Scott v. Astrue*, 647 F.3d 734, 739-40 (7th Cir. 2011). Here, there was no evidence that the Plaintiff had significant or sustained improvement with her treatment such that it would decrease the limitations described by Drs. Kalapatapu on what she could do if put in a competitive work environment on a regular basis. Indeed, even if the Plaintiff's symptoms were sometimes

improving and sometimes not, this would still preclude her from obtaining and maintaining a competitive job:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case. Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008).

Even if it was reasonable for the ALJ to have determined that the treating psychiatrists' opinions did not deserve controlling weight, he still had to determine what weight they do deserve. In other words, even "[w]hen the record contains well supported contradictory evidence, the treating physician's opinion 'is just one more piece of evidence for the administrative law judge to weigh,' taking into consideration the various factors listed in the regulation." *Skelton v. Astrue*, No. 09-CV-296-BBC, 2009 WL 4730792, at *7 (W.D. Wis. Dec. 3, 2009) (citation omitted). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations *require* the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (emphasis added) (citation omitted); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision which "said nothing regarding this checklist of factors"); *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) ("Here, the ALJ's decision indicates that she considered opinion evidence in accordance with §§ 404.1527 and 416.927. However, the decision does not explicitly address the checklist of factors as applied to the medical opinion evidence.").

In this case, the ALJ did not properly consider the relevant factors. Although the ALJ mentions in passing that the Plaintiff began treatment with Drs. S.G. Kalapatapu and U.R. Kalapatapu in June 2013, "was seen every month for medication management of depression and PTSD, and she received medication adjustments at most appointments, approximately 10 of the 14 follow-ups of record" (R. at 27), the ALJ fails to credit the total length of this frequent and regular treatment (from June 2013 through the time of the ALJ decision in June 2015). Additionally, the ALJ did not consider the nature of the treatment, which focused on Plaintiff's mental disabilities, prescriptions for the same, and therapy. Moreover, as mentioned earlier in this opinion, the treating psychiatrists' opinions are supported by findings in treatment notes. Finally, both physicians are board-certified psychiatrists directly opining about the Plaintiff's mental disabilities. Although the Seventh Circuit has held that an ALJ does not always have to explicitly weigh every factor while discussing his decision to reject a treating physician's report, *Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012), the ALJ's reasoning and the facts of this case are more similar to *Campbell*, in which several of the factors support the conclusion that the psychiatrists' opinions should have been given greater weight. *Campbell*, 627 F.3d at 308.

Finally, the Court notes that the ALJ did not adequately explain why he gave opinions from non-examining state agency psychologists "significant weight" over the treating psychiatrists. (R. at 34.) Dr. Kennedy and Dr. Shipley are both state-agency reviewing psychologists who reviewed Plaintiff's medical record and opined that Plaintiff's anxiety disorder constituted a severe impairment, which caused only mild limitations in daily activities and moderate limitations in social functioning and maintaining concentration, persistence, or

pace. (R. at 95–98, 107–08.) It is well-established that an opinion provided by "a non-examining physician does not, by itself, suffice [to reject an examining physician's opinion]." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014) (holding when an ALJ rejects the opinions from an examining source in favor of findings from a non-examining source it "can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step."). Here, the first non-examining psychologist reviewed the Plaintiff's file on March 15, 2013. (R. at 95–99.) A second non-treating psychologist reviewed the Plaintiff's claim file on May 28, 2013 (R. at 112), which included mental health records through February 2013 (R. at 112), more than two years before the ALJ's decision and before the opinions from the treating psychiatrists were entered into the record. This is improper. *See Jelinek*, 662 F.3d at 812 (stating an ALJ would be hard-pressed to justify rejecting treating physician's opinions for two year old opinions from non-examiners). "Although an ALJ may give weight to consultative opinions, here, the ALJ did not adequately explain why the reviewers' opinions were entitled to greater weight than those of treating" physicians Drs. Kalapatapu. *Campbell*, 627 F.3d at 309.

In sum, because the ALJ discounted the medical opinions of the treating psychiatrists without applying the "checklist of factors," and further failed to support his decision to give their opinions "little weight," the Court cannot find substantial evidence supporting the Commissioner's decision. *See Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (finding the ALJ's rejection of a treating physician's mental residual functional capacity questionnaire was not substantially supported and remanding the case).

## B. The ALJ's Credibility Assessment

Because this case is already being remanded to the ALJ so the treating psychiatrists' opinions may be properly addressed, this Court does not reach the issue of whether the ALJ's credibility assessment was patently wrong. On remand, the ALJ should address the Plaintiff's concern about the credibility assessment. The Court notes that should the treating psychiatrists' opinions be given greater weight, this might cause the ALJ to view the Plaintiff's subjective statements about her mental impairments in a more favorable light.

## C. The ALJ's Reliance on Vocational Expert Testimony

The Plaintiff also argues that the ALJ failed to present a hypothetical question to the Vocational Expert (VE) that accurately described all of the mental limitations that the ALJ recognized. The ALJ found that "claimant had moderate difficulties in social functioning" and "[w]ith regard to concentration, persistence, or pace, the claimant has moderate difficulties." (R. at 34.) The ALJ's hypothetical question to the VE limited Plaintiff to unskilled, light work, with no more than occasional contact with the general public, supervisors, and co-workers and no more than occasional changes in the work environment. (R. at 87–89.) Plaintiff argues that the ALJ ran afoul of *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015), and *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010), in not including the moderate restriction in concentration, persistence, or pace, in the hypothetical. This issue need not be directly decided upon by this Court since this matter requires remand on another issue. However, on remand, the ALJ should be careful to include the appropriate limitations in the hypothetical posed to the VE.

## CONCLUSION

For the reasons stated above the Court REVERSES the Commissioner's decision and REMANDS to the ALJ for further proceedings consistent with this Opinion and Order.

SO ORDERED on August 24, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT